# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DEMETRIUS NICHOLS, | ) ) ) | |
| Petitioner, | ) ) | No. 07 C 3498 |
| v. | ) ) | Wayne R. Andersen District Judge |
| GERARDO ACEVEDO, Acting Warden Hill Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on Demetrius Nichols' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we deny this petition for habeas corpus.

## BACKGROUND

Petitioner does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his conviction for attempted first degree murder and aggravated unlawful restraint. *People v. Nichols*, No. 1-04-0516 (Ill. App. First Dist. 2006). For purposes of federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, we adopt the Illinois Appellate Court facts as our own.

Following a bench trial in the Circuit Court of Cook County, Illinois, Petitioner was convicted of attempted first degree murder, aggravated battery, and aggravated unlawful restraint of Ebony Foster on December 3, 2002. Petitioner was sentenced to concurrent prison terms of twenty years for attempted murder, five years for aggravated battery and three years for

aggravated unlawful restraint. Foster and her two cousins, Shanti Thomas and Kybria Thomas, testified at trial.

Ebony Foster and Petitioner had six children together. In Foster's apartment on December 3, 2002, Foster argued that Petitioner failed to take their son, Darnell Nichols, to a speech therapy appointment. Foster asked Petitioner to leave and Petitioner refused. Foster and her cousin Shanti Thomas left the apartment and headed to Shanti Thomas' house. Thirty minutes later they returned to Foster's apartment with Shanti's sister Kybria Thomas. Upon their arrival, Petitioner was not on the premises and Foster "broke a stick off" in the apartment's lock to prevent Petitioner from using his key.

While talking with the Thomas sisters upstairs, Foster heard Petitioner banging on the door and asking to be allowed to enter. Subsequently, Foster heard a "pop" and then heard Petitioner heading upstairs. Petitioner was carrying a twelve to fourteen inch long, flat, metal pole. Upon seeing the Thomas sisters, Petitioner placed the pole in his back pocket, went downstairs and called for Foster. When Foster did not follow, Petitioner went back upstairs and requested that the Thomas sisters leave. This was Foster's apartment and she told Petitioner that her cousins did not have to leave. Fearing Petitioner's anger, Foster asked the Thomas sisters to stay because she knew he was going to "jump on [her]" if they left. Foster wanted to call the police and asked Shanti Thomas if she could use her cell phone. As Foster was dialing 911, Petitioned grabbed the phone and broke it. Foster testified that Petitioner said, "[A]ll you mother fuckers here are going to die tonight." As Shanti Thomas tried to leave, Foster grabbed her and attempted to keep her there. When Foster grabbed Shanti Thomas, Petitioner grabbed Foster on the back of the neck and dragged them downstairs. Kybria Thomas ran down the stairs and Shanti Thomas broke free and left.

2

Foster testified that she tried to get loose but was unable to. Petitioner took her into the kitchen and grabbed a six to eight inch long butcher knife from the dish rack next to the sink. Petitioner grabbed the knife and made a downward motion. Foster grabbed the knife and her hand was sliced. Kybria Thomas testified that she saw Petitioner stab Foster once before she ran home. Kybria Tomas did not see exactly where Foster was cut. Foster was stabbed in the leg and persisted in her attempts to get away from Petitioner. Foster finally got away, but Petitioner stabbed her in the back of the head and upper shoulder. Petitioner said, "[B]itch, if I can't have you, ain't nobody going to have you." Petitioner and Foster were both crying. Foster feared for her life. Foster finally broke loose and ran out the front door and headed across the street to Queenie Lowery's house. Foster stated that Petitioner appeared "high" that day. During Foster's trial testimony, Foster displayed scars on her left knee, left thigh, shoulder, back of head, back, and left thumb to the trial court.

Lowrey testified that she heard knocks on her door. Lowrey opened the door and saw Foster. Foster informed her that she had been stabbed, and then fell on the landing to the stairs "like she was passing out." Lowrey put a towel on Foster's leg to stop the bleeding, and called an ambulance. Lowrey kept talking to Foster to prevent her from passing out. An ambulance arrived followed by the police. Foster took an ambulance to St. James Olympia Fields Hospital. Foster stayed at the hospital for a day and a half.

Foster presented as a Level 1 trauma alert with multiple stab wounds but normal vital signs. Dr. Keller was the trauma surgeon on call at St. James Olympia Fields Hospital. Dr. Keller's biggest concern was the back wound, which was considered a chest wound because of the potential for a collapsed lung, and the knee wound because of arterial bleeding which "could potentially be life threatening" if not treated. Although Dr. Keller performed multiple sutures on

the knee wound, she did not completely close the wound so she could continue to observe the tissue. She also stitched the others wounds which ranged in size from one to three centimeters. Foster never lost consciousness during her 23 hours of observation. Petitioner did not testify at his trial.

The trial court found Petitioner guilty of attempted murder, aggravated battery, and aggravated unlawful restraint. The trial court specifically found that Petitioner's statements on that night, coupled with Foster's attempts to get the knife away from Petitioner and deflect the blows, more than sufficiently established attempted murder beyond a reasonable doubt even though no vital organs were damaged. The court also found that Foster suffered permanent disfigurement due to scarring and great bodily harm from the arterial bleeding. The court merged several counts and sentenced defendant to twenty years for attempted murder, five years for aggravated battery, and three years for unlawful restraint to be served concurrently.

Petitioner appealed his convictions to the Illinois Appellate Court, arguing that the State failed to prove that he had the specific intent to commit murder and that his convictions for aggravated battery and aggravated unlawful restraint should be vacated because they arose from the same act as the attempted murder conviction. The State countered that the trial court should have imposed consecutive sentences, not concurrent sentences under 730 ILCS 5/5-8-4(a). The Illinois Appellate Court affirmed the attempted murder conviction and aggravated unlawful restraint conviction, vacated the aggravated battery conviction, and remanded the case with instructions so that the trial court could change the twenty and three year sentences to consecutive rather than concurrent.

The trial court entered an order changing Petitioner's sentences from concurrent to consecutive. Petitioner filed a petition for leave to appeal with the Illinois Supreme Court.

Petitioner included additional claims which were not in his direct appeal. Among these were the claims of perjured testimony, ineffective counsel, and false testimony. The Illinois Supreme Court denied the petition for leave to appeal. Petitioner never filed a post conviction petition in state court.

On June 21, 2007, Petitioner filed the instant *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 in which he raises the following claims:

1. The trial court denied Petitioner of his constitutional right to due process by convicting him through the State's use of perjured testimony.

2. The trial court denied Petitioner his constitutional right to due process by sentencing him to consecutive sentences for attempted first degree murder and aggravated unlawful restraint without sufficient evidence that victim's injuries were serious or life-threatening.

## DISCUSSION

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir. 1989) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 provides that federal courts may not grant habeas relief under 28 U.S.C. § 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Boss v. Pierce*, 263 F.3d 734, 738 (7th Cir. 2001).

5

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first. Otherwise, petitioner risks procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Petitioner must exhaust his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

In this case, Petitioner's state court remedies have been exhausted. Petitioner filed a direct appeal with the Illinois Appellate Court and petitioned for leave to appeal to the Illinois Supreme Court. Further, Petitioner failed to file a post-conviction before his allotted time for this appeal expired on December 26, 2007. Thus, petitioner possesses no further available means for pursuing a review of his conviction in state court.

### I. Procedurally Defaulted Claim

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the

6

state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

In order for Petitioner to preserve claims for federal habeas review, he must provide the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, "one complete round" is finished once the petitioner has presented the habeas claims, whether on direct appeal or on post-conviction appeal, at each stage of the appellate process, up through and including the Illinois Supreme Court. *See Id.* at 847-48; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

In this case, Petitioner procedurally defaulted on his perjured testimony claim. In his federal habeas petition, Petitioner claims that Foster, on February 16, 2000, misinformed officers and filed false charges in regards to Petitioner committing domestic abuse. Petitioner has attached Foster's written notarized statement to his habeas petition. However, Petitioner's perjured testimony claim is not based on actual perjury that occurred during his trial regarding the acts that occurred in December of 2002. Petitioner's perjured witness testimony is better classified as a claim that Foster's witness testimony was not credible, rather than perjured testimony.

It is true that Petitioner included this claim in his petition for leave to appeal to the Illinois Supreme Court on direct appeal. However, Petitioner failed to bring the perjured testimony claim at the Illinois Appellate level. Thus, Petitioner did not provide the state courts with "one complete round" to analyze this claim as required by *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Further, Petitioner did not file a petition under the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1, et seq). Thus, this claim is procedurally defaulted.

A federal court may nonetheless address the merits of procedurally defaulted claims if the petitioner can establish cause and prejudice that would excuse it or, alternatively, establish that he fits within the miscarriage of justice exception to the cause and prejudice rule. *Coleman*, 501 U.S. at 750-51; *Wainright v. Sykes*, 433 U.S. 72, 84-85 (1977). The Supreme Court has interpreted "cause" under this test to be something external to the petitioner which is both beyond his control and which cannot fairly be attributed to him. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to establish prejudice, the petitioner "must show not merely that the errors at … trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 494.

In this case, Petitioner has failed to establish cause and prejudice in his petition. Petitioner has not shown an external cause to his failure to raise the perjured testimony claim with the Illinois Appellate Court. Even though Petitioner raised this claim with the Illinois Supreme Court, Petitioner still possesses the burden to show cause for his failure to raise this precise claim at the Illinois Appellate level. Moreover, Petitioner has not shown how he was prejudiced by his failure to include this issue in his appeal to the Illinois Appellate Court.

Although Petitioner has failed to establish cause and prejudice to excuse his procedural default, he can still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This exception is limited to those extraordinary cases in which the petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). Therefore, Petitioner must present a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). The miscarriage of justice exception applies only if the

8

petitioner can demonstrate that it is more likely than not that no reasonable jury would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In this case, Petitioner claims neither actual innocence nor a fundamental miscarriage of justice. Under the perjured testimony claim, Petitioner is not claiming that he is actually innocent of the acts committed in December of 2002. He is merely claiming that Thomas lied when she gave incorrect statements regarding a domestic abuse conviction that took place on February 16, 2000. The alleged perjury that Petitioner references is for prior conduct that is not at issue in this case. Assuming that Thomas did lie, this fact would not make Petitioner innocent for the crimes at issue. Thus, Petitioner is not afforded the "miscarriage of justice" exception and his perjured testimony claim is procedurally defaulted.

## II. Merits of the Claim Properly Presented

Petitioner has properly preserved one claim in his habeas petition. The preserved claim is Petitioner's contention that he was denied his constitutional right to due process. This claim is based on the State's alleged lack of evidence to prove that the victim suffered severe bodily injury. The State must show that the victim suffered severe bodily injury to satisfy the consecutive sentences requirement. 730 ILCS 5/5-8-4(a). The trial court gave Petitioner concurrent sentences for his convictions of attempted first degree murder, aggravated unlawful restraint, and aggravated battery. The Illinois Appellate Court vacated the aggravated battery claim under the "one act, one crime" guidelines and remanded the case with instructions to the trial court to change the twenty year attempted first degree murder and three year aggravated unlawful restraint sentences from concurrent to consecutive. The Illinois Appellate Court also made a determination that the victim had suffered severe bodily injury. Petitioner raised this

habeas claim in a petition for leave to appeal to the Illinois Supreme Court and it was subsequently denied.

The provision in Title 28, United States Code, Section 2254(b) governs the consideration of any claim adjudicated by a state court on its merits. Under that statute, we may grant habeas relief only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly establish Federal Law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(2)(1). Under subsection (d)(2), habeas relief is possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(2)(1).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), attempted to clarify the applicable standard of review within the meaning of 28 U.S.C. § 2254. The Court noted that the Act does not explicitly prescribe a recognizable standard of review for applying either of the statutory clauses. *Id.* at 385. Recognizing the need for further clarification and direction to lower courts, the Supreme Court concluded that the "[the Act] plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Id*. at 386 (citations omitted). Additionally, the Supreme Court determined that, in passing the statute, "Congress wished to curb delays, to prevent 'retrials' on federal habeas petitions and to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill these goals within the bounds of the law, [the statute] instructs them to do so." *Id*. Therefore, we must apply a deferential review of the state court decision unless it is determined that the state court violated federal law.

10

Applying this standard of deference we deny Petitioner's claim. Petitioner claims that the State failed to provide sufficient evidence indicating that Foster suffered severe bodily injury. In Illinois, before a court can issue consecutive sentences, a two step process must be met. 730 ILCS 5/5-8-4(a). First, the court must determine that the offenses "were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5-8-4(c)(2). Petitioner restrained Foster against her will and stabbed her multiple times with a six to eight inch butcher knife. Here, the Illinois Appellate Court ruled that the two remaining convictions, attempted first degree murder and aggravated unlawful restraint, arose out of a single course of conduct with similar criminal objective.

Second, the court must determine that "one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(a)(I). In this case, because attempted first degree murder is a Class X felony, the first part is met.

Petitioner contends that the State failed to present sufficient evidence of severe bodily injury. 730 ILCS 5/5-8-1(a)(3). Petitioner claims that no pictures were submitted to the trial judge and that the injuries should not be classified as severe bodily injury. The Illinois Appellate Court noted that Foster presented to the emergency room as a Level 1 trauma alert. Foster suffered stab wounds to her left knee, left thigh, shoulder, back of head, back, and left thumb. The wound to the back was troublesome since it was deep enough to cause a collapsed lung. Foster's leg wound consisted of arterial bleeding that could have been potentially life threatening if not treated. The Illinois Appellate Court ruled that Foster suffered severe bodily injury.

Petitioner argues that the Illinois Appellate Court incorrectly decided that Foster suffered severe bodily injury. Interpretation of state law is in the province of the state courts. "[A]n error

11

in the interpretation of the Illinois aggravated battery statute, or the application of state sentencing rules, does not present a cognizable claim for federal habeas relief." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citations omitted).

Moreover, the *pro se* Petitioner may be attempting to argue that error occurred in this case because *Apprendi* requires the trial judge (or jury) to make the determination of whether severe bodily injury occurred and not the Illinois Appellate Court. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, *Apprendi* rights do not apply when the consecutive sentences add up to less than the maximum penalty allowed for the original crime. *US v. Hernandez*, 330 F.3d 964, 982 (7th Cir. 2003); *U.S. v. Noble*, 299 F.3d 907, 909 (7th Cir. 2002). The maximum penalty for attempted first degree murder, a class X felony, is thirty years. 730 ILCS 5/5-8-1(a)(3). Petitioner's consecutive sentences are twenty years for attempted first degree murder and three years for aggravated unlawful restraint. Thus, the combination of these two sentences is less than thirty years and Petitioner does not have a valid *Apprendi* right.

For these reasons, we deny Petitioner's habeas claim of due process violation based on the State's alleged lack of evidence to prove that the victim suffered severe bodily injury.

## **CONCLUSION**

For the foregoing reasons, Petitioner Demetrius Nichols' petition for writ of habeas corpus is denied. Petitioner's motions to dismiss (## 17, 20, 21) are denied. All pending motions are deemed moot by this order. This case is hereby terminated.

It is so ordered.

/Wayne R. Andersen
District Judge

Date: March 7, 2008